RECORD NOS. 12-3049(L); 12-3075

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

𝕴𝖓 𝕿𝖍𝖊

# 𝕌𝕟𝕚𝕥𝕖𝕕 𝕊𝕥𝕒𝕥𝕖𝕤 ℭ𝕠𝕦𝕣𝕥 𝕠𝕗 𝔸𝕡𝕡𝕖𝕒𝕝𝕤

## 𝔉𝔬𝔯 𝔗𝔥𝔢 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 ℭ𝔬𝔩𝔲𝔪𝔟𝔦𝔞 ℭ𝔦𝔯𝔠𝔲𝔦𝔱

# UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

**v.**

# CHESTER D. RANSOM, JR.; BRYAN W. TALBOTT,

*Defendants – Appellants*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

———————

## BRIEF OF APPELLANTS

———————

Richard Seligman
LAW OFFICE OF RICHARD SELIGMAN
1350 Connecticut Avenue, NW, Suite 202
Washington, DC  20036
(202) 223-7800

Matthew G. Kaiser
Rebecca S. LeGrand
Rachel A. Browder
THE KAISER LAW FIRM PLLC
1750 K Street, NW, Suite 200
Washington, DC  20006
(202) 640-2850

*Counsel for Appellant Ransom*

*Counsel for Appellant Talbott*

THE LEX GROUP^DC ♦ 1825 K Street, N.W. ♦ Suite 103 ♦ Washington, D.C.  20006
(202) 955-0001 ♦ (800) 856-4419 ♦ Fax: (202) 955-0022 ♦ www.thelexgroup.com

## CERTIFICATE AS TO PARTIES,
## RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the Appellants hereby state as follows:

**A.    Parties and Amici.**

The parties below were Bryan W. Talbott, Chester D. Ransom Jr., and the United States.  The parties to this appeal are Bryan W. Talbott, Chester D. Ransom Jr., and the United States.  There are no intervenors or *amici*.

**B.    Rulings Under Review.**

In this appeal, the appellants, Mr. Talbott and Mr. Ransom, contend that their sentences should be vacated and the case should be remanded for resentencing. The district court issued a judgment imposing sentence on Mr. Talbott on September 19, 2012, following a September 5, 2012, sentencing hearing. J.A. 502-13 (judgment); J.A. 444-500 (hearing).  The district court issued a judgment imposing sentence on Mr. Ransom on June 22, 2012, following a June 15, 2012, sentencing hearing. J.A. 364-70 (judgment); J.A. 300-63 (hearing).

**C.    Related Cases.**

There are no related cases.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ................................................................................. i

TABLE OF CONTENTS .................................................................. ii

TABLE OF AUTHORITIES ........................................................ vi

STATEMENT OF SUBJECT MATTER JURISDICTION ........................... 1

ISSUES PRESENTED FOR REVIEW ........................................... 1

    I.     Issues Presented By Mr. Talbott ................................. 1

          Issue 1 .................................................................... 1

          Issue 2 .................................................................... 2

    II.    Issues Presented By Mr. Ransom ................................ 2

          Issue 1 .................................................................... 2

          Issue 2 .................................................................... 3

STATUTES AND REGULATIONS ............................................... 3

STATEMENT OF THE CASE ..................................................... 3

STATEMENT OF FACTS .......................................................... 5

    I.     Statement Of Facts As To Mr. Talbott......................... 5

    II.    Statement Of Facts As To Chester Ransom, Jr. ...................... 10

SUMMARY OF THE ARGUMENT ......................................................... 18

    I.    Mr. Talbott's Summary Of The Argument ............................. 18

    II.    Mr. Ransom's Summary Of The Argument ............................ 19

STANDARD OF REVIEW ......................................................... 20

ARGUMENT ......................................................... 21

    I.    Mr. Talbott's And Mr. Ransom's Sentences Were
        Procedurally Unreasonable ....................................................... 21

        A.    Mr. Talbott's Sentence Was Procedurally
                Unreasonable Because The District Court Failed
                To Explain Why A Sentence Well Above The
                Sentencing Guidelines Was Appropriate ....................... 22

                1.    This Court's Prior Opinion In *Akhigbe*
                        Compels Remand In This Case ........................... 24

                2.    The District Court's Failure To Explain The
                        Reasons For Mr. Talbott's Sentence Was
                        Plain Error .......................................................... 27

                3.    The District Court's Finding That Mr.
                        Talbott Diverted Funds And Resources That
                        Could Have Gone To Restitution Is Not
                        Supported By The Record ................................... 29

        B.    Mr. Ransom's Sentence Was Procedurally
                Unreasonable Because The District Court Failed
                To Explain Why A Sentence Well Above The
                Sentencing Guidelines Was Appropriate ....................... 34

                1.    The District Court's Failure To Explain The
                        Reasons For Mr. Ransom's Sentence Was
                        Plain Error .......................................................... 38

iii

2.  The Court's Factual Findings During
Sentencing Require A Preponderance Of
Evidence And Are Reviewable For Clear
Error ................................................. 40

II.  Mr. Talbott and Mr. Ransom's Sentences Were
Substantively Unreasonable ..................................... 43

A.  Mr. Talbott's Sentence Was Substantively
Unreasonable ................................................. 43

B.  Mr. Ransom's Sentence Was Substantively
Unreasonable ................................................. 47

III.  Appellants' Pre-Sentence Waiver Does Not Preclude
Appellate Review ..................................... 51

A.  A Pre-Sentence Waiver Does Not Prevent A
Person From Challenging A Sentence Imposed As
A Result Of Unfair Procedures ....................................... 51

B.  Mr. Talbott Is Not Bound By Any Appeal Waiver
In The Plea Agreement Because The Government
Previously Was Relieved Of Its Obligations Under
The Plea ........................................ 53

C.  Mr. Ransom's Pre-Sentence Waiver Was Not
Made Knowingly and Intelligently Due to
Ineffective Assistance of Counsel and it is
Unenforceable Because The District Court
Committed An Error Of Law During Sentencing ......... 55

CONCLUSION ............................................. 60

ORAL ARGUMENT IS REQUESTED ..................................... 61

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Gall v. United States*,
　　552 U.S. 38 (2007) ............................ 20, 21, 22, 27, 31, 38, 44, 47, 51

*In re Sealed Case*,
　　527 F.3d 188 (D.C. Cir. 2008) ........................... 20, 22, 27, 28, 29, 38,
　　　　　　　　　　　　　　　　　　　　　　　　　　 39, 40, 44, 47, 51

*In re Sealed Case*,
　　552 F.3d 841 (D.C. Cir. 2009) .................................. 21, 31, 34, 41, 42

*In re Sealed Case*,
　　702 F.3d 59 (D.C. Cir. 2012) ........................................................ 52

*Johnson v. United States*,
　　520 U.S. 461 (1997) .................................................................. 28, 38

*Lafler v. Cooper*,
　　132 S. Ct. 1376 (2012) ...................................................................... 56

*McMann v. Richardson*,
　　397 U.S. 759 (1970) .......................................................................... 57

*Mitchell v. United States*,
　　526 U.S. 314 (1999) .......................................................................... 30

*Rita v. United States*,
　　551 U.S. 338 (2007) .................................................................... 23, 35

*Strickland v. Washington*,
　　466 U.S. 668 (1984) .................................................................... 58, 59

\* Cases chiefly relied upon are marked with asterisks.

*United States v. Akhigbe,
      642 F.3d 1078 (D.C. Cir. 2011) .................... 22, 23, 24, 25, 26, 27, 28,
                                                                    29, 35, 37, 38, 39, 40

United States v. Bolla,
      346 F.3d 1148 (D.C. Cir. 2003) ........................................................ 31

Untied States v. Booze,
      293 F.3d 516 (D.C. Cir. 2002) ........................................................ 57

United States v. Bras,
      483 F.3d 103 (D.C. Cir. 2007) ........................................................ 21

United States v. Chaikin,
      960 F.2d 171 (D.C. Cir. 1992) ........................................................ 31

United States v. Gardellini,
      545 F.3d 1089 (D.C. Cir. 2008) .................................................. 43, 47

*United States v. Gaviria,
      116 F.3d 1498 (D.C. Cir. 1997) .................................................. 57, 58

*United States v. Guillen,
      561 F.3d 527 (D.C. Cir. 2009) .................................. 51, 52, 53, 54, 55

United States v. Hall,
      610 F.3d 727 (D.C. Cir. 2010) .............................................. 23, 35, 36

United States v. Lawson,
      494 F.3d 1046 (D.C. Cir. 2007) ........................................................ 30

United States v. Locke,
      664 F.3d 353 (D.C. Cir. 2011) .................................................. 28, 38

United States v. Russell,
      600 F.3d 631 (D.C. Cir. 2010) ........................................................ 47

United States v. Saani,
      650 F.3d 761 (D.C. Cir. 2011) .................................................. 30, 34

*United States v. Ventura*,
    650 F.3d 746 (D.C. Cir. 2011) ......................................... 21, 34, 41, 42

*United States v. Wilson*,
    605 F.3d 985 (D.C. Cir. 2010) .................................................... 20, 21

*United States v. Zapete-Garcia*,
    447 F.3d 57 (1st Cir. 2006) ......................................................... 39, 40

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. V ........................................................................ 29, 30

U.S. CONST. amend. VI........................................................................ 56, 57

## STATUTES

18 U.S.C. § 286................................................................................... 4

18 U.S.C. § 1341................................................................................. 4

18 U.S.C. § 1344................................................................................. 3

18 U.S.C. § 1349................................................................................. 3, 4

18 U.S.C. § 3231................................................................................. 1

*18 U.S.C. § 3553................................................................................ 14

18 U.S.C. § 3553(a) ............................... 1, 3, 9, 10, 16, 18, 19, 21, 22, 23, 24,
                               25, 34, 35, 37, 45, 46, 47, 49, 52, 61

18 U.S.C. § 3553(a)(4)(A) ..................................................................... 45

18 U.S.C. § 3553(a)(6).......................................................................... 45, 47

18 U.S.C. § 3553(c) ........................................................... 22, 23, 28, 35, 39

18 U.S.C. § 3553(c)(2)........................................................................... 22

22 D.C. Code § 1805 ........................................................................... 3

22 D.C. Code § 3231 ........................................................................... 3

22 D.C. Code § 3242(a) ..................................................................... 3

28 U.S.C. § 991(B) ........................................................................... 37

28 U.S.C. § 1291 ................................................................................. 1

28 U.S.C. § 2255 ............................................................................... 59

## GUIDELINES

U.S.S.G. § 2B1.1(b)(2) ...................................................................... 12

U.S.S.G. § 3B1.3.......................................................................... 35, 50

U.S.S.G. § 3C1.1......................................................................... 53

U.S.S.G. § 5K2.0 ................................................................... 9, 53, 54

## STATEMENT OF SUBJECT MATTER JURISDICTION

The district court had jurisdiction in Bryan Talbott's case pursuant to 18 U.S.C. § 3231 and issued a judgment imposing sentence on him on September 19, 2012, following a September 5, 2012, sentencing hearing. J.A. 502-13 (judgment); J.A. 444-500 (hearing).[1] Mr. Talbott filed a timely notice of appeal on September 10, 2012. J.A. 501.

The district court had jurisdiction in Chester Ransom's case pursuant to 18 U.S.C. § 3231 and issued a judgment imposing sentence on him on June 22, 2012, following a June 15, 2012, sentencing hearing. J.A. 364-70 (judgment); J.A. 300-63 (hearing). Mr. Ransom filed a timely notice of appeal on June 28, 2012. J.A. 371.

This Court has jurisdiction in both cases pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

**I.    Issues Presented By Mr. Talbott**

This case presents two issues.

**Issue 1:**

When imposing an above-guidelines sentence, a district court must explain why the statutory factors set forth in 18 U.S.C. § 3553(a) justify that sentence. If the court does not provide such an explanation, the case must be

---

[1] "J.A." denotes "Joint Appendix", citations to which will be followed by the appropriate page number.

1

remanded for resentencing as procedurally unreasonable. Moreover, any facts that are the basis for the sentence imposed must be supported by the record. Here, the district court did not adequately explain why it imposed a sentence substantially above the guidelines based on unsupported facts. Should the case be remanded for resentencing?

**Issue 2:**

A district court must impose a sentence which is "sufficient, but not greater than necessary" to meet the purposes of sentencing. If a sentence is so great as to constitute an abuse of discretion, the sentence is substantively unreasonable. Here, the district court sentenced Mr. Talbott to an unreasonably high sentence of 10 years in prison, which was 42 months over the top of the Guidelines range and 48 months more than his co-defendant. Is the sentence substantively unreasonable?

## II.     Issues Presented By Mr. Ransom

This case presents two issues with respect to Chester Ransom Jr.

**Issue 1:**

Was the sentence of Chester Ransom Jr. in violation of his rights and procedurally unreasonable because it exceeded the sentencing guidelines by 15 months and the district court did not adequately explain its decision to

impose an above guideline sentence when on the same basis it declined to

impose guideline enhancements because of insufficient evidence?

**Issue 2:**

Was the sentence of Chester Ransom, Jr. in violation of his rights and

substantively unreasonable because it exceeded the sentencing guidelines by

15 months and the district court did not adequately explain why it imposed

an above-Guidelines sentence and weigh the § 3553(a) factors in a way that

does not result in an unreasonably high sentence?

## STATUTES AND REGULATIONS

All pertinent statutes and regulations are set forth in the Addendum

accompanying this brief.

## STATEMENT OF THE CASE

On December 8, 2011, Bryan Talbott and Chester D. Ransom, Jr.

were charged in a four-count indictment with the following offenses: one

count of conspiracy to commit bank fraud under 18 U.S.C. §§ 1344, 1349;

two counts of bank fraud pursuant to 18 U.S.C. § 1344; and one count of

uttering under 22 D.C. Code §§ 3231, 3242(a), and 1805. J.A. 27-37.

The government filed a superseding information against Mr. Talbott

and Mr. Ransom on January 5, 2012, charging conspiracy to commit bank

fraud charge (count one), and adding one count of conspiracy to commit

mail fraud under 18 U.S.C. §§ 1341, 1349 (count two), and one count of conspiracy to defraud the government pursuant to 18 U.S.C. § 286 (count three). J.A. 38-53.

Mr. Ransom entered a guilty plea on January 6, 2012. J.A. 68. At the end of his June 15, 2012, sentencing hearing, the Court imposed an above-guidelines sentence of 72 months, ordered Mr. Ransom to perform 100 hours' community service, and ordered Mr. Ransom to pay a $300 special assessment, as well as $2,969,284.00 in restitution jointly and severally with Mr. Talbott. J.A. 300-63. Judgment was entered on June 22, 2012, and a Notice of Appeal was filed on June 28, 2012. J.A. 364-72.

Mr. Talbott also entered a guilty plea on January 9, 2012. J.A. 129-53. He was scheduled to be sentenced on the same date as Mr. Ransom. J.A. 255, 376. However, because Mr. Talbott was in transit, his sentencing was re-set for July 2, 2012. J.A. 373. The July sentencing hearing date was later sua sponte converted by the district court to a status hearing, and Mr. Talbott's sentencing was re-set for September 5, 2012. J.A. 375-83, J.A. 411-13.

At Mr. Talbott's sentencing, the district court announced a sentence of 120 months in prison. J.A. 496. Mr. Talbott was ordered to pay $2,969,284 in restitution jointly with Mr. Ransom. J.A. 496-97.

Mr. Talbott filed a notice of appeal on September 10, 2012. J.A. 501.

## STATEMENT OF FACTS

### I.     Statement Of Facts As To Mr. Talbott

On January 9, 2012, Mr. Talbott entered a guilty plea to an information charging him with conspiracy to commit bank fraud, conspiracy to commit mail fraud, and conspiracy to defraud the government. J.A. 38-52.

The plea agreement contained a stipulated guidelines range. J.A. 130-32. The parties stipulated that the final offense level was 22, which, with an anticipated criminal history category II, resulted in a guidelines range of 46 to 57 months. J.A. 131-32. The parties also agreed that "neither a downward nor an upward departure" from the stipulated guidelines range was warranted. J.A. 132. In calculating the guidelines range, the parties did not include an increase based on the number of victims. *See* J.A. 130-32. Nonetheless, the statement of offense that accompanied the plea agreement said that there were 54 victims. J.A. 148.

In Mr. Talbott's Presentence Report, the probation officer assessed a four-level increase to the stipulated offense level because there were more

5

than 50 victims. J.A. 553. According to the probation officer, the factual

support for this enhancement was from "Declarations of Loss and Victim

Impact Statements" she received, as well as a chart provided by the

government listing 54 victims related to count 2 and "four other

companies/agencies" who suffered losses as to counts 1 and 3. J.A. 552-53,

566-70. The report otherwise contained the guidelines calculation in the plea

agreement. *See* J.A. 553-54. Shortly after the plea was entered, Mr. Talbott

was released by the district court and allowed to live in Delaware. J.A. 375.

    In response to the presentence report's guidelines calculation, the

parties entered into a joint stipulation. J.A.155-56. They agreed in that

stipulation that there were nine or fewer victims for purposes of the

sentencing guidelines and that a guidelines enhancement for the number of

victims was not supported. J.A. 155.

    On June 11, 2012 – five days before Mr. Talbott was originally

scheduled to be sentenced – the government filed a motion to revoke Mr.

Talbott's bond based on information that he had forged a lien release in

Delaware on a car. J.A. 282-301. Mr. Talbott did not dispute the

government's information about the Delaware auto lien, and promptly

surrendered himself for arrest in Delaware. J.A. 289-92. Mr. Talbott was still

in transit on June 15, 2012 and was not able to appear at his sentencing

6

hearing. J.A. 332, 376. Nonetheless, Mr. Ransom, who had been scheduled to be sentenced that same day, appeared for his sentencing. J.A. 332, 376.

As set forth in more detail below, Mr. Ransom was ultimately sentenced to 72 months in prison, 16 months above the top of the sentencing guidelines range. J.A. 360, 365, 377.   A number of victims spoke at Mr. Ransom's sentencing. J.A. 326-38, 446. Though Mr. Talbott was not present, the court informed the victims who testified that they did not need to return for Mr. Talbott's sentencing – it would consider their statements as applicable to Mr. Talbott as well as Mr. Ransom. J.A. 375-77.

Mr. Talbott's sentencing date was initially reset for July 2, 2012. J.A. 373. Shortly before this hearing, the district court sua sponte converted it into a status hearing. J.A. 375-83.

At the status hearing, the court informed counsel that it was considering a number of additional guidelines enhancements, including an enhancement for abusing a position of trust or use of a special skill, an aggravating role adjustment, an enhancement for the number of victims, and an enhancement for obstruction of justice. J.A.378-80. The court also explained that it was considering taking away credit for acceptance of responsibility. J.A. 380-82.

7

The district court told Mr. Talbott that it believed he still had

substantial funds from the fraud. J.A. 381-82. Specifically, the court told Mr.

Talbott that it didn't "believe for a minute that you've disclosed all of these

assets," J.A. 382, because the court believed that his "money had to go

somewhere, and there's no indication that you got a drug problem or a

gambling problem or anything else. So I believe that it's out there." J.A.

382. The district court strongly suggested that if Mr. Talbott were able to

locate more funds, the court would reward him with a lower sentence:

> [B]etween now and the next time I see you, Mr.
> Talbott, you need to have a heart to heart with your
> lawyer, and if there is anything further that is out
> there, now's the time to disclose it if you want any
> shot at a break from me with respect to any of
> these adjustments that I've mentioned or anything
> else at this sentencing. Now's the time to come
> clean.
> J.A. 383.

Later, the district court warned Mr. Talbott of the consequences of failing to

disclose all of his assets, telling him that:

> If we come back at the sentencing and I find out
> that there is any asset that has not been disclosed –
> I don't care if it's, you know, a skateboard . . . it's
> going to be his fault, and it's going to inure to his
> detriment. . . . [I]f he wants to get some slack
> from me, now is the time. But if I hear about
> anything . . . between now and the sentencing that
> wasn't disclosed, you know, 151 to 188 months,

he will get all of that and then some. So just so that
we're clear. Are we clear?
J.A. 405-06.

Mr. Talbott's new sentencing date was set for September 5, 2012. J.A.

411-13. Mr. Talbott gave signed consent forms to the government permitting

them to search and seize everything he owned in advance of the hearing, and

filed a brief opposing the guideline enhancements discussed by the court.

J.A. 438-43. The government agreed that no guideline adjustments were

warranted, but requested that the district court grant an upward departure

from the stipulated guideline range under U.S.S.G. § 5K2.0. J.A. 415-437.

At the hearing, the court determined that no guideline enhancements

applied, and rejected to government's request to increase Mr. Talbott's

guidelines level under § 5K2.0. J.A. 470-71. The court did take away credit

for acceptance of responsibility, yielding a final adjusted offense level of 25

with a guidelines range of 63 to 78 months. J.A. 470-71.

After hearing from both parties the district court recited the factors it

is required to consider under 18 U.S.C. § 3553(a), though without any

specific reference to Mr. Talbott's case or situation. J.A. 492-93.

The court then turned to impose sentence. J.A. 495. It told Mr. Talbott

that with the statutory maximums at play in the case, it had the power to

impose up to 60 years' imprisonment. J.A. 495. After telling Mr. Talbott he

had a bad character, the court sentenced him to 10 years in prison – 42 months above the top of the sentencing guidelines range. J.A. 495-96.

The Statement of Reasons echoed the district court's pronouncements at the sentencing hearing. *See* J.A 602-05. In particular, the court identified four § 3553(a) factors that informed its decision-making, reiterated its assessment of Mr. Talbott's "complete lack of moral character," referenced Mr. Talbott's prior fraud conviction and criminal offenses he committed before sentencing, and found that Mr. Talbott "diverted funds and resources away that could have gone to provide restitution." J.A. 604.

## II.    Statement Of Facts As To Chester Ransom, Jr.

Chester Ransom, Jr. was arrested on November 17, 2011. J.A. 17. On January 6, 2012, he entered a guilty plea, pursuant to a written plea agreement, J.A. 68, to an information charging him with conspiracy to commit bank fraud, conspiracy to commit mail fraud, and conspiracy to defraud the government, J.A. 53. Shortly, after the plea was entered, on January 18, 2012, Mr. Ransom was released pending sentencing. J.A. 21.

In Mr. Ransom's plea agreement, the parties stipulated that his guidelines offense level was 22 and the guidelines range was 46 to 57 months. J.A. 105-06. The offense level accounted for a three-level reduction for acceptance of responsibility. J.A. 105. The parties agreed that "neither a

10

downward nor an upward departure" from the stipulated guidelines range

was warranted," and that neither party would suggest that the Court consider

one. J.A. 106. In calculating the guidelines range, the parties did not include

an increase based on the number of victims. J.A. 105.

The Probation Office prepared a presentence report for Mr. Ransom.

J.A. 514-41. As in Mr. Talbott's report, the probation officer assessed a four-

level increase to the guidelines range because there were more than 50

victims. J.A. 525. The officer relied on "Declarations of Loss and Victim

Impact Statements" she received, as well as a chart provided by the

government listing 54 victims related to count 2 and "four other

companies/agencies" who suffered losses on counts 1 and 3. J.A. 540.

Probation otherwise agreed with the guidelines calculation contained in the

plea agreement.

On May 21, 2012, Mr. Ransom's new defense counsel, Brian Stolarz,

entered his appearance and filed a consent motion to continue sentencing to

enable him to prepare. J.A. 157. On May 31, 2012, after discussions between

new defense counsel and the Assistant United States Attorney, a Stipulation

Modifying Chester Ransom's Statement of Offenses was filed. J.A. 158. The

stipulation states in pertinent part:

> The plea agreement calculated an offense
> level of 22 under the Federal Sentencing

11

Guidelines Manual (Guidelines), with a stipulated guideline range of 46 to 57 months …

The plea agreement was negotiated with Mr. Ransom's prior counsel. Mr. Ransom recently retained new counsel in this matter. Counsel reviewed the record in this matter. Counsel also spoke with counsel for the government, David S. Johnson, regarding the plea agreement and the statement of the offenses. Based on those conversations, the United States and Mr. Ransom further stipulate and agree to the following:

1.      There are 9 or fewer victims of the offense for purposes of U.S.S.G. § 2B1.1(b)(2), which supports the stipulated Guidelines offense level of 22 as set forth in the plea agreement. Any contrary statement about the number of victims in the statement of Offenses or Information is not stipulated to by the parties.

2.      There is no stipulated number of victims to provide a stipulated factual basis of an increase to the offense level applicable to Mr. Ransom under U.S.S.G. § 2B1.1(b)(2) and the parties agree that no such enhancement applies. J.A. 158-59.

On June 1, 2012, Mr. Stolarz submitted a letter objecting to the four

level victim enhancements stating as follows:

The enhancement is presumed to be based on the initial statement of the offenses which references 54 potential victims . . . . Mr. Ransom does not dispute that the initial statement of the offenses reflects this language, but that statement of the offenses was signed while Mr. Ransom was represented by former counsel who did not bring the issue to Mr. Ransom's attention or seek to challenge it in any way. J.A. 513B-C.

On June 8, 2012, the government filed its Memorandum in Aid of Sentencing.  J.A. 162. In the memorandum, the government notes that the parties agree that the combined offense level is 22 and that the U.S. Probation Office determined that Mr. Ransom's criminal history is level II. J.A. 166. The government further stated that the parties "believe and contend that Ransom's Guideline range is 46 to 57 months of incarceration." *Id.*  The government argued for a sentence at the high end of the Guidelines, pointing out that one of the fraud schemes occurred while the defendant was on probation for a similar crime. J.A. 170.

Mr. Ransom filed a Memorandum in Aid of Sentencing on June 8, 2012, requesting a downward variance to 30 months of incarceration. J.A. 183-254. In the memorandum, Mr. Ransom alerted the court to the conflict between the parties' stipulation on the number of victims and the presentence report, J.A. 187 n.1. In his argument for a variance, Mr. Ransom's counsel also pointed out that "only 50% of individuals sentenced for a fraud offense in [the D.C.] Circuit in 2011 were sentenced to a Guideline sentence, and the median sentence for individuals convicted of fraud in this Circuit was 20 months." J.A. 194. Further, with regard to below Guideline sentences, counsel explained that national statistics indicated a

median sentence of 12 months, or a 49% decrease from the Guideline

minimum. J.A. 194.

At Mr. Ransom's sentencing hearing, the Court indicated it was aware

of the conflict between the number of victims enhancement in the PSR and

the parties' prior stipulation on the subject. J.A. 306-10. Mr. Ransom's

counsel explained that there was a potential issue of ineffective assistance of

counsel with Mr. Ransom's previous attorney and that, to obviate the need

for pursuing that claim, Mr. Ransom obtained new counsel and entered into

a stipulation that there were only nine victims for Guideline purposes, not

50. J.A. 305-06. Mr. Ransom's counsel argued that this was done to ensure

some benefit to the bargain and expectations of the parties. J.A. 305-06.

Moreover, as Mr. Ransom's counsel pointed out, the government was not

presenting evidence to prove that there were 50 victims for Guidelines

purposes – instead, the government presented the evidence for the Court's

"consideration for other various factors in 3553." J.A. 306. In response, the

court asserted that, as explained in paragraph 6 of the plea agreement, it was

not bound by any stipulations. J.A. 308. The Court threatened to hold an

immediate hearing on the number of victims explaining that "we'll have

a hearing right now if you want to challenge it." J.A. 308. Defense

counsel responded, "If that needs to happen, then we might seek to

14

withdraw the whole plea altogether, because it was negotiated with prior counsel . . . ." J.A. 308. Asked if he was making a motion to withdraw the plea, counsel responded, "We are not right now, Your Honor," reiterating that the purpose of the stipulation was to obviate the need for a hearing, to streamline the proceedings, and to reflect the parties' agreement not to have an enhancement. J.A. 309. Later, when the court again asked whether he was making a motion to withdraw the plea, counsel consulted with his client, confirming that although no motion would be made, Mr. Ransom objected to the enhancement, especially given the absence of evidence to support a finding that there were 50 victims. J.A. 310.

Although the government explained that it "believe[d] there was an adequate factual basis" for the Court to apply the number of victims enhancement, J.A. 313, reiterated that the parties agreed to a stipulation to allow "the government to live up to its bargain" and ensure "the Court was aware of . . . the parties' intentions." J.A. 314.

Ultimately, the Court ruled that the four-level enhancement for more than 50 victims did not apply, "because the parties stipulated to the nine victims" and because there wasn't "sufficient factual information in the record . . . when the matter is in dispute." J.A. 314. The court went on to say that

15

> I think the appropriate thing for me to do is to find
> that the total offense level is a 22, and that the
> advisory guideline range accordingly is 46 to 57
> months. Now, of course, as counsel is well aware,
> Mr. Ransom is well aware, I'm not bound by the
> guidelines, and the guidelines are just one of many
> things that I have to consider in determining the
> appropriate sentence.
> J.A. 315.

During the government's allocution, it emphasized that a 57-month

sentence at the high end of the Guidelines was supported by that fact that the

offense was committed while the defendant was on probation. J.A. 323.

Before sentencing Mr. Ransom, the court recited the factors in

§ 3553(a) and noted that the guidelines range was 46-57 months.

> I look at the fact there are a number of victims who
> submitted victim impact statements. I look at the
> fact that you did not receive an enhancement under
> the guidelines for abuse of a position of trust,
> although it is clear that with your property
> management business you had that sort of
> relationship with your clients where they trusted
> you with their money… I note that you received a
> break in that sense and ….your guideline
> calculations did not include that.
> J.A. 358.

The court then went on to focus on Mr. Ransom's prior Virginia

embezzlement conviction, noting that it was similar to his convictions in this

case. J.A. 359.

The Court imposed a sentence of 72 months without explaining on the record why it varied upward from the Sentencing Guidelines. J.A. 362. However, the judge did advise Mr. Ransom that he had the right to appeal his sentence "if the period of imprisonment is longer than the statutory maximum or the sentence departs upwards from the applicable sentencing guideline range." J.A. 362.

In the Statement of Reasons, the Court identified the advisory Guideline Range before departure as an offense level of 22, Criminal History of II, and an imprisonment range of 46 to 57 months. J.A. 598. Because the judge did not indicate that he had departed from the advisory sentencing guidelines, he did not identify any reasons for departure on the Statement of Reasons. *See* J.A. 599. The Court explained its basis for imposing an above-guidelines sentence as follows:

> The guideline range of 46 to 57 months was insufficient, given the number of victims, the long period and variety of fraudulent acts, and lack of real remorse. Furthermore, Mr. Ransom was convicted of embezzlement in 2003 in Virginia for running a property management company that embezzled from his client, and he began this fraudulent activity while still on probation. J.A. 600.

17

# SUMMARY OF THE ARGUMENT

## I.    Mr. Talbott's Summary Of The Argument

First, at Mr. Talbott's sentencing hearing, the district court imposed a sentence that was 42 months above the top of the Guidelines range. In imposing sentence, the court did not adequately explain its decision. Instead, it recited some of the § 3553(a) factors that informed its decision-making, expressed its displeasure with Mr. Talbott, discussed how his conduct affected victims, and referenced his prior conviction and crimes he committed before sentencing – both of which were already accounted for in his Guidelines calculation. Moreover, the district court's sentence was based in part on its unsupported belief that Mr. Talbott was hiding assets. Because the district court did not adequately explain why it imposed the above-Guidelines sentence, this case should be remanded for resentencing as procedurally unreasonable.

Second, the district court abused its discretion in imposing an unreasonably high 10-year sentence. In imposing sentence, the district court referenced Mr. Talbott's prior conviction and crimes he committed before sentencing. Both of these things were already taken into account in calculating his Guidelines range – Mr. Talbott's criminal history reflected his prior conviction, and he lost credit for acceptance of responsibility based

18

on his new crimes. The district court's decision to impose an unreasonably high sentence appears to have been solely based on the district court's assessment of Mr. Talbott's character. This assessment alone does not justify any particular sentence. Further, the disparity between Mr. Talbott's co-defendant's sentence is significant: Mr. Ransom was sentenced to 72 months, while Mr. Talbott was sentenced to 120. Even after taking into account Mr. Talbott's troubling new conduct, Mr. Talbott's sentence was still significantly higher than Mr. Ransom's. For all of these reasons, Mr. Talbott's sentence is substantively unreasonable.

## II.     Mr. Ransom's Summary Of The Argument

Mr. Ransom argues that his sentence, which was 15 months above the guideline range, was procedurally unreasonable because the judge failed to identify any specific 3553(a) factors that justified a variance from the sentencing guidelines and the factors noted by the judge were already considered by the guidelines. The procedure was flawed because the court varied from the guidelines because of the large number of victims, when the court had previously found insufficient evidence to determine the number of victims exceeded 50. Moreover, the court's failure to make specific findings of fact on the number of victims was a procedural flaw that required no objection and was subject to the standard of review of clear error. The court

also relied a guideline factor for abuse of trust, which was not addressed by the PSR and without giving the parties an opportunity to address his legal reasoning. The court's sentence was substantively unreasonable because it failed to give compelling reasons justifying a 15-month variance when virtually all of the factors identified were considered by the guidelines themselves and the defendant's actions were not shown to be outside the heartland of the usual fraud cases contemplated by the guideline drafters.

## STANDARD OF REVIEW

As this court has explained, a challenge to a sentence on procedural or substantive grounds is subject to the same standard: "Our review for both procedural soundness—including whether the district court considered the necessary factors and adequately explained a deviation from the Guidelines—and the substantive reasonableness of sentences is for abuse of discretion." *United States v. Wilson*, 605 F.3d 985, 1033-34 (D.C. Cir. 2010) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). However, if the defendant fails to timely object to the alleged procedural error, this Court's review is for plain error. *Id.* at 1034 (citing *In re Sealed Case*, 527 F.3d 188, 191–92 (D.C. Cir. 2008)).

A district court's factual findings during sentence are reviewable for clear error, "without regard to whether the appellant requested findings,

objected to them, or moved to amend the findings before the trial judge."

*United States v. Ventura*, 650 F.3d 746, 749 (D.C. Cir. 2011) (quoting *In re*

*Sealed Case*, 552 F.3d 841, 849 (D.C. Cir. 2009) (Edwards and Silberman,

JJ., concurring)).

If the Court determines there was no procedural error, it then

considers whether the sentence was substantively reasonable, "giving 'due

deference' to the district court's determination that the § 3553(a) factors, as

a whole, justify the extent of the variance." *Wilson*, 605 F.3d at 1034 (citing

*Gall*, 552 U.S. at 51). In this context, the substantive reasonableness of the

sentence is reviewed for abuse of discretion – even if no objection was

raised below. *Id.* (citing *United States v. Bras*, 483 F.3d 103, 113 (D.C. Cir.

2007)).

## ARGUMENT

### I.    Mr. Talbott's And Mr. Ransom's Sentences Were Procedurally Unreasonable

Both Mr. Talbott and Mr. Ransom were given sentences which are

procedurally unreasonable.

21

**A.    Mr. Talbott's Sentence Was Procedurally Unreasonable Because The District Court Failed To Explain Why A Sentence Well Above The Sentencing Guidelines Was Appropriate**

After the Supreme Court's opinion in *Gall v. United States*, 552 U.S. 38 (2007), a district court imposing sentence is obligated to explain, on the record, the basis for the sentence that was imposed under 18 U.S.C. § 3553(a). *See United States v. Akhigbe*, 642 F.3d 1078, 1086 (D.C. Cir. 2011); *see also In re Sealed Case*, 527 F.3d 188, 191 (D.C. Cir. 2008) ("Given the broad substantive discretion afforded to district courts in sentencing, there are concomitant procedural requirements they must follow."). In particular, after calculating the appropriate Guidelines range and giving the parties a chance to argue for whatever sentence they deem appropriate, the district court considers all of the § 3553(a) sentencing factors and undertakes "an individualized assessment based on the facts presented." *Akhigbe*, 642 F.3d at 1085 (quoting *Gall*, 552 U.S. at 49-50). Once the district court determines the sentence, 18 U.S.C. § 3553(c) "requires it to 'state in open court the reasons for its imposition of the particular sentence,' and if the sentence falls outside the advisory Guidelines range, to provide 'the specific reason' for the departure or variance." *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

22

Reciting the sentencing factors that influence the court's decision-making is not enough: the court must explain *why* those factors justify the defendant's particular sentence. *Akhigbe*, 642 F.3d at 1086 ("Although the district court did recite sentencing factors that it said informed its decision-making, contrary to section 3553(c) and controlling case law[,] it never explained why those factors justified Akhigbe's particular sentence."); *United States v. Hall*, 610 F.3d 727, 745 (D.C. Cir. 2010) ("[T]he district court did not explain why, in view of the factors in 18 U.S.C. § 3553(a), a sentence of 188 months was necessary, much less why the lower sentence that Hall requested would be insufficient. A remand is, therefore, required."); *see also Rita v. United States*, 551 U.S. 338, 356–58 (2007). Where the district court fails to provide this explanation, remand is required. *Akhigbe*, 642 F.3d at 1088; *Hall*, 610 F.3d at 745.

Here, the district court simply failed to explain why the sentence imposed meets the factors set forth in 18 U.S.C. § 3553(a).

In its most detailed discussion of how the section 3553(a) factors applied to Mr. Talbott, the district court said: "I think that the nature and circumstances of your offense are such that a sentence above the guidelines is clearly appropriate." J.A. 495. Other than this general statement, and an earlier recitation of the § 3553(a) factors that did not refer to Mr. Talbott or

this offense, the court did not engage in any further discussion of the 18 U.S.C. § 3553(a) factors. It did not discuss, for example, why Mr. Talbott's sentence should be so much higher than Mr. Ransom's previously-imposed above-guidelines sentence.

Instead, after expressing sympathy for Mr. Talbott's medical condition – which the district court identified as "probably about the only" basis for a decrease in Mr. Talbott's sentence from what the district court would otherwise have imposed – the court told Mr. Talbott that he needed to be incapacitated, and that his sentence would be 10 years in prison. J.A. 495-96.

In the Statement of Reasons, the district court did no more work to explain the 3553(a) factors, saying only that it that imposed a sentence outside the guidelines, in part, because Mr. Talbott "diverted funds and resources away that could have gone to provide restitution." J.A. 604.

### 1.    This Court's Prior Opinion In *Akhigbe* Compels Remand In This Case

Mr. Talbott's unexplained 10-year sentence, which is 42 months above the top of the guidelines range, is not consistent with this Court's prior sentencing holdings.

In *United States v. Akhigbe*, 642 F.3d 1078, 1086 (D.C. Cir. 2011), this Court reversed as procedurally unreasonable an above-Guidelines

24

sentence because the district court failed to adequately explain how the § 3553(a) factors justified the sentence. There, Mr. Akhigbe was convicted for health care fraud and making false statements. *Id.* at 1079. At his sentencing hearing, Mr. Akhigbe and the government agreed that the Guidelines range was 33 to 41 months' imprisonment and that a sentence within that range was appropriate. *Id.* at 1081.

Before imposing sentence, the district court identified three § 3553(a) factors that it said were significant to its decision: the severity of the offense; deterrence; and the need to protect the public. *Akhigbe*, 642 F.3d at 1085. Then, the court discussed the severity of Mr. Akhigbe's conduct, finding that his brazen actions – including providing a false billing record from Thanksgiving day – harmed victims. *Id.* at 1085-86. After reciting the agreed-upon Guidelines range, the court stated that it was "convinced that a sentence outside of the guideline range [wa]s appropriate," and varied upward 12 months to a 53-month sentence. *Id.* at 1085. The court's statement of reasons was even less specific than its oral explanation. *Id.* at 1087.

This Court reversed Mr. Akhigbe's above-Guidelines sentence on the grounds that it was procedurally unreasonable. *Akhigbe*, 642 F.3d at 1086-88. Even though the district court recited the § 3553(a) factors it said

25

informed its decision-making, it failed to explain why those factors justified Mr. Akhigbe's particular sentence. *Id.* In particular, even though the district court devoted most of its discussion at sentencing to the severity of the offense, it never explained why Mr. Akhigbe's fraud was more harmful or egregious than the typical case. *Id.* at 1085-86. Similarly, the district court "did not suggest that it believed the Guidelines range for health care fraud was too low even in the mine-run case." *Id.* at 1086. Under these circumstances, this Court could "only speculate as to why the district court believed the severity of Akhigbe's offense merited a 53-month sentence," *id.*, which was one year – or 28% more – over the top of the Guidelines range.

This case more egregious than *Akhigbe*. Here, the district court expressed its displeasure with Mr. Talbott, and referenced his prior conviction and crimes he committed before sentencing – both of which were already accounted for in his Guidelines calculation. J.A. 471 (removing credit for acceptance of responsibility based on crimes before sentencing), 493-94 (discussing prior conviction and crimes before sentencing), 554-55 (accounting for prior conviction in criminal history category). At no point did the district court address the Guidelines range to explain why it apparently thought that the range was so inadequate that a variance 66%

above the top of that range was warranted. *See Akhigbe*, 642 F.3d at 1086.

Under these circumstances, as in *Akhigbe*, "we can only speculate as to why

the district court believed the severity of [Mr. Talbott's] offense merited a

[120]-month sentence." *Id.*

In *Akhigbe*, the district court varied 28% above the top of the

Guidelines range; here, the court varied 66% percent above the top of the

range. Following the Supreme Court's ruling in *Gall*, this Court has

explained that deviations of this magnitude require compelling justifications:

if the district court decides to impose a sentence outside the Guidelines, "it

must consider the extent of the deviation and ensure that the justification is

sufficiently compelling to support the degree of the variance." *In re Sealed

Case*, 527 F.3d at 191 (quoting *Gall*, 552 U.S. at 50). As the Supreme Court

has explained, "[w]e find it uncontroversial that a major departure should be

supported by a more significant justification than a minor one." *Gall*, 552

U.S. at 50. Here, the district court failed to provide a sufficient justification

for the four-year departure from the Guidelines range. This requires remand.

### 2.    The District Court's Failure To Explain The Reasons For Mr. Talbott's Sentence Was Plain Error

Mr. Talbott's sentence, like Mr. Akhigbe's sentence, should be

overturned as procedurally unreasonable even under plain error review.

*Akhigbe*, 642 F.3d at 1087-88 (finding that the district court plainly erred in

failing to adequately explain the reason for Mr. Akhigbe's above-Guidelines sentence).

To prevail under the plain error standard, Mr. Talbott "must demonstrate that the district court: (1) committed error; (2) that is plain; and (3) that affects h[is] substantial rights." *United States v. Locke*, 664 F.3d 353, 357 (D.C. Cir. 2011) (citing *Johnson v. United States*, 520 U.S. 461, 467 (1997)). "If all three conditions are met, and if the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings,' an appellate court may then exercise its discretion to notice a forfeited error." *Id.* (internal citation omitted).

In *In re Sealed Case*, this Court recognized that failing to adequately explain a sentence is plain error: "a failure to comply with § 3553(c) causes grave institutional harm, as well as simultaneously depriving the defendant of the benefit of our review. This failure is therefore plain error." 527 F.3d 188, 193 (D.C. Cir. 2008). This holding was reaffirmed in *Akhigbe*. There, the Court held that "[t]he district court's failure to explain adequately the sentence it imposed is 'prejudicial in itself because it precludes appellate review of the substantive reasonableness of the sentence, thus seriously affect[ing] the fairness, integrity, or public reputation of judicial

proceedings." *Akhigbe*, 642 F.3d at 1087 (quoting *In re Sealed Case*, 527 F.3d at 193).

Just as in *In re Sealed Case* and *Akhigbe*, the district court failed to adequately explain the reason for the sentence it imposed on Mr. Talbott. As a result, the district court plainly erred.

> **3.    The District Court's Finding That Mr. Talbott Diverted Funds And Resources That Could Have Gone To Restitution Is Not Supported By The Record**

In addition to failing to adequately explain the sentence imposed on Mr. Talbott, the district court erred by basing Mr. Talbott's sentence on the district court's unsupported belief that Mr. Talbott had hidden assets undiscovered by the government.

The district court told Mr. Talbott at the July status conference that:

> [B]etween now and the next time I see you, Mr. Talbott, you need to have a heart to heart with your lawyer, and if there is anything further that is out there, now's the time to disclose it if you want any shot at a break from me with respect to any of these adjustments that I've mentioned or anything else at this sentencing. **Now's the time to come clean**.
> J.A. at 383 (emphasis added).

As an initial matter, the district court's threat to increase Mr. Talbott's sentence on pain of disclosing information plainly violated Mr. Talbott's Fifth Amendment right against self-incrimination. The Fifth Amendment is

still present in a sentencing hearing. *Mitchell v. United States*, 526 U.S. 314, 330 (U.S. 1999) (noting that "[t]he Government retains the burden of proving facts relevant to the crime at the sentencing phase and cannot enlist the defendant in this process at the expense of the self-incrimination privilege" and holding that a sentencing court may not draw an adverse inference from the defendant's silence).

To the extent that the district court imposed an increased sentence based on Mr. Talbott's failure to meet the district court's novel and unconstitutional requirements for disclosure, this Court has already rejected this approach. *United States v. Saani*, 650 F.3d 761, 770-771 (D.C. Cir. 2011) (holding that where "portions of the record can be read to suggest the district court varied upward, in part, because [the defendant] refused to disclose the source of his funds" the district court may have erred as a matter of law by penalizing the defendant for asserting his Fifth Amendment rights and remanding) (citing *Mitchell*, 526 U.S. at 325-30.).

Moreover, while "it is permissible for a sentencing court to build a sentence, at least in part, on conduct" outside the offense of conviction the court must "determine by a preponderance of the evidence that [the defendant] engaged in the conduct." *Saani*, 650 F.3d at 771 (quoting *United States v. Lawson*, 494 F.3d 1046, 1056 (D.C. Cir. 2007)) (brackets in

original). A district court commits clear procedural error when it bases a

sentence on erroneous facts or unsupported assumptions. *In re Sealed Case*,

552 F.3d 841, 844 (D.C. Cir. 2009) (requiring appellate courts to first

"ensure that the district court committed no procedural error, 'such

as . . . selecting a sentence based on clearly erroneous facts'") (quoting *Gall

v. United States*, 552 U.S. 38, 51 (2007)); *United States v. Bolla*,  346 F.3d

1148, 1153 (D.C. Cir. 2003) (district court's procedural error was plain

when it relied on facts that are "in direct conflict with evidence" presented at

the sentencing hearing). A person being sentenced retains "due process

rights to be sentenced on the basis of accurate information." *United States v.

Chaikin*, 960 F.2d 171, 175 (D.C. Cir. 1992).

Here, the district court believed that Mr. Talbott had additional assets,

which he had hidden, that could have been used to repay the victims of the

offense, *see*, *e.g.*, J.A. 408,[2] and relied on this belief in justifying Mr.

Talbott's above-guidelines sentence in its Statement of Reasons. J.A. 604.

---

[2] For example, at the status hearing, after the government explained its
extensive efforts to locate Mr. Talbott's assets, J.A. 402, the Court remarked
as follows: "I'm sure you've given it a lot of effort. My point is that I think
if you gave it some more effort, you'd find something because I'm
convinced there is more out there," J.A. 408. The government put substantial
resources into locating assets hidden by Mr. Talbott. It found none. Yet the
district court was not moved.

But the district court's determination that there were more assets in

Mr. Talbott's control is contradicted by the record. Instead, the record shows

that Mr. Talbott actively and consistently cooperated with the government to

identify bank accounts and other assets that could be used to make

restitution, and the government did not contest the fact that Mr. Talbott's

assets had been exhausted. J.A. 407, 458, 468, 559-63.

Mr. Talbott repeatedly disclosed his assets to the government. *See* J.A.

407. As the Presentence Investigation Report indicates, Mr. Talbott provided

the Probation office with detailed information about his assets, liabilities,

rental income, monthly expenses, bankruptcy filing, and real property

holdings. J.A. 559-63.

Mr. Talbott took extraordinary steps to make sure that his remaining

assets could be used by the government to provide restitution to victims.  He

executed notarized documents assigning all of his remaining rental income

to the government, J.A. 458. He told the government where to find items of

personal property that could be sold and applied to restitution, including an

antique player piano, clock, furniture, and cars. J.A. 468. He consented to

searches of his property and storage units to allow the government to

identify and seize any items of value they found, and did not object to the

32

government obtaining records directly from the banks he had dealt with. J.A. 468.

Despite this, the district court had a hunch that Mr. Talbott had not disclosed all of his assets. But a district court cannot increase the amount of time a person spends in prison based on an unsupported hunch, particularly when, as here, that hunch is dead wrong.

There is no support in the record for the courts hunch that money was being diverted from the victims. Instead, the record reflects that, at the time of sentencing, there was "no giant pot money" available to repay victims: Mr. Talbott could only contribute his remaining personal property in storage, rental income that he voluntarily assigned to the government, and the real property disclosed in his financial statements. J.A. 467. As his counsel explained at sentencing, essentially all the money Mr. Talbott had was invested in his business – which ultimately failed – or used to support his family. J.A. 468-69. Mr. Talbott's business had failed. He lost all of his money. Nothing in the record suggests that this assessment of Mr. Talbott's financial status was inaccurate. Yet, the district court refused to move off of its unsupported belief that there was a pot of money out there.

For these reasons, the district court's finding that Mr. Talbott diverted funds that could have gone to restitution – which was a key basis for his

33

dramatically above-guidelines sentence – is clearly erroneous. *Ventura*, 650 F.3d at 748; *In re Sealed Case*, 552 F.3d at 844-45; *Saani*, 650 F.3d at 771.

This clear error requires remand.

**B.     Mr. Ransom's Sentence Was Procedurally Unreasonable Because The District Court Failed To Explain Why A Sentence Well Above The Sentencing Guidelines Was Appropriate**

Prior to imposing sentence on Mr. Ransom, the Court recited the factors in § 3553(a). J.A. 356-357. It also noted that the guidelines were 46-57 months. J.A. 358.  However, the Court did not address why the guidelines were insufficient to address the factors in § 3553(a) or why a variance was necessary to avoid unwarranted sentencing disparities. The Court stated:

> I look at the fact there are a number of victims who submitted victim impact statements.  I look at the fact that you did not receive an enhancement under the guidelines for abuse of a position of trust, although it is clear that with your property management business you had that sort of relationship with your clients where they trusted you with their money…I note that you received a break in that sense and ….your guideline calculations did not include that.
> J.A. 358.

The District Court also commented on Mr. Ransom's prior conviction for embezzlement in Virginia being similar to the instant case and then imposed a specific sentence of 72 months without explanation on the record as to why

34

he was imposing a sentence at variance with the U.S. Sentencing Guidelines. J.A. 359.

As noted above with regard to Mr. Talbots's sentencing, merely identifying the sentencing factors that the law requires the Court to consider is not enough: the court must explain *why* those factors justify the defendant's particular sentence. *Akhigbe*, 642 F.3d at 1086 ("Although the district court did recite sentencing factors that it said informed its decision-making, contrary to section 3553(c) and controlling case law[,] it never explained why those factors justified Akhigbe's particular sentence."); *United States v. Hall*, 610 F.3d 727, 745 (D.C. Cir. 2010) ("[T]he district court did not explain why, in view of the factors in 18 U.S.C. § 3553(a), a sentence of 188 months was necessary, much less why the lower sentence that Hall requested would be insufficient. A remand is, therefore, required."); *see also Rita v. United States*, 551 U.S. 338, 356–58 (2007).

With regard to Mr. Ransom, the court's explanation at the time of sentencing contained factors which were taken into account by the Sentencing Guidelines and rejected by the court because of insufficient evidence, such as the number of victims. Moreover, the court suggested that in its view, the defendant should be held accountable for an abuse of trust enhancement (apparently referring to U.S.S.G. § 3B1.3), even though no

35

enhancement was suggested by the Probation Office and it was not previously addressed by the parties. The defense counsel was sandbagged on this point and had no opportunity to respond as to whether an enhancement would be appropriate under the U.S. Sentencing Guidelines. The court also took note of the commission of the instant offense when the defendant was on probation for a similar offense, suggesting that was an aggravating factor. However, the court did not give reasons why the sentencing guidelines did not sufficiently take that factor into consideration when the defendant received a two-point enhancement, elevating his criminal history from Level I to Level II. J.A. 528.

The judge did not explain why a sentence of 72 months versus 57 months was necessary much less why a lesser sentence in this case as requested by the defendant was insufficient. *See United States v. Hall*, 610 F.3d at 745. In this case, Mr. Ransom through his counsel argued in his sentencing memorandum and in his allocution that the a lesser sentence would reduce the disparity in sentencing in this as well as other jurisdictions for similarly situated people. Ransom's counsel requested a sentence of 30 months and pointed out that 50% of the defendants in this Circuit were sentenced to a guideline range where the median was 20 months and the mean was 31 months of incarceration. J.A. 344; *see also* J.A. 194. Clearly,

one of the underlying purposes of the sentencing guidelines was to minimize sentencing disparities. *See* 28 U.S.C.A. § 991(B). In this case, the defendant argued based on U.S. Sentencing Commission data that a downward variance would be appropriate to meet the objective of § 3553(a) to avoid unwarranted disparities. The Court did not address this argument and without stating the reasons on the record imposed an upward variance of 15 months, thereby apparently further aggravating the disparity in sentencing.

In *United States v. Akhigbe*, 642 F.3d at 1086-88, this Circuit reversed an above-Guidelines sentence on the grounds that it was procedurally unreasonable because it failed to explain why the § 3553(a) factors justified Mr. Akhigbe's particular sentence. *Id.* It never explained why his fraud was more harmful or egregious than the typical case. *Id.* at 1085-86. The district court "did not suggest that it believed the Guidelines range for health care fraud was too low even in the mine-run case." *Id.* at 1086. Accordingly, this Court on review could "only speculate as to why the district court believed the severity of Akhigbe's offense merited a 53-month sentence," *id.*, which was one year over the top of the Guidelines range. Mr. Ransom was sentenced 15 months above the guidelines and the District Court has never said that the guidelines for fraud affecting less than fifty victims is too low or why the fraud in this case was more harmful than the typical case

37

considered by the Sentencing Commission. As noted by this Circuit, if the district court decides to impose a sentence outside the Guidelines, "it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *In re Sealed Case*, 527 F.3d at 191 (quoting *Gall*, 552 U.S. at 50). No such reasoning occurred here.

### 1. The District Court's Failure To Explain The Reasons For Mr. Ransom's Sentence Was Plain Error

Mr. Ransom's sentence should be overturned as procedurally unreasonable even under plain error review. *Akhigbe*, 642 F.3d at 1087-88 (finding that the district court plainly erred in failing to adequately explain the reason for Mr. Akhigbe's above-Guidelines sentence).

To prevail under the plain error standard, Mr. Ransom "must demonstrate that the district court: (1) committed error; (2) that is plain; and (3) that affects h[is] substantial rights." *United States v. Locke*, 664 F.3d 353, 357 (D.C. Cir. 2011) (citing *Johnson v. United States*, 520 U.S. 461, 467 (1997)). "If all three conditions are met, and if the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings,' an appellate court may then exercise its discretion to notice a forfeited error." *Id.* (internal citation omitted).

In *In re Sealed Case*, this Court recognized that failing to adequately explain a sentence is plain error: "a failure to comply with § 3553(c) causes grave institutional harm, as well as simultaneously depriving the defendant of the benefit of our review. This failure is therefore plain error." 527 F.3d 188, 193 (D.C. Cir. 2008). *Accord Akhigbe*, *supra* at 1087 (quoting *In re Sealed Case*, 527 F.3d at 193).  In Mr. Ransom's case the only explanation given for the above guideline sentence was: 1) the number of victims 2) he did not receive an enhancement for abuse of trust and 3) he committed the instant offense while on probation for a prior similar offense. The first factor was taken into account by the guidelines and the Court ruled that there was insufficient evidence to establish that there were more than 50 victims. The standard of proof for a variance is no less than the standard of proof for facts applicable to a guideline factor. The second factor, abuse of trust, was not addressed by the PSR and contrary to the Court's off the cuff comment, it is not at all clear that it would apply in this case.

The third factor referenced by the Court, that Mr. Ransom committed the instant offense while on probation for a similar offense, was taken into account by the U.S. Sentencing Guidelines in calculating his criminal history. Similarly, in *United States v. Zapete-Garcia*, 447 F.3d 57, 60 (1st Cir. 2006), the district court imposed a 48 month sentence where the

guidelines range was zero to six months, citing the fact that the defendant had already been deported twice and that he was arrested and charged with possession of drugs and a weapon. The First Circuit reversed, explaining that, with respect to the deportation, "'[w]hen a factor is already included in the calculating of the [G]uidelines sentencing range, a judge who wishes to rely on that same factor to impose a sentence above or below the range must articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the [G]uidelines calculation.'" *Id.* There (as here), the judge "provided no such explanation." *Id*. Just as in *In re Sealed Case* and *Akhigbe*, the district court failed to adequately explain the reason for the sentence it imposed on Mr. Ransom and therefore committed plain error.

### 2. The Court's Factual Findings During Sentencing Require A Preponderance Of Evidence And Are Reviewable For Clear Error

In the instant case it is clear that the district court imposed a sentence at variance with the Guidelines based on disputed factual findings about the number of victims. Defense counsel disputed the findings in the PSR and again at the sentencing hearing. Indeed, ultimately, the district court concluded it had insufficient evidence to make a factual finding supporting a guideline enhancement based on there being at least 50 victims. J.A. 314.

40

Accordingly, the district court set a guideline range of 46-57 months as opposed to the 70-87 month range recommended in the PSR. J.A. 533. However, the district judge went on to impose a 72 month sentence (15 months above the guideline range) based on the number of victims but with no specific findings of fact about what that number was. It is unclear whether he applied a lower standard of proof than preponderance of the evidence and found that there were at least 50 victims or he believed there was sufficient evidence for a lower number of victims and he disagreed with some other aspect of the Sentencing Guidelines. It is submitted that the district court's failure to make specific findings of fact by a preponderance of the evidence regarding the number of victims constituted procedural error and, because it involved findings of fact, the standard of review is clear error. This Circuit recently addressed the standard of proof with regard to factual findings at sentencing and the standard of review:

> At sentencing, the district court may make findings of fact under a preponderance-of-the-evidence standard …We review a sentencing court's factual determinations for clear error, "without regard to whether the appellant requested findings, objected to them, or moved to amend the findings before the trial judge." *In re Sealed Case*, 552 F.3d 841, 849 (D.C. Cir. 2009) (Edwards and Silberman, JJ., concurring).
> *United States v. Ventura*, 650 F.3d 746,748 (D.C. Cir. 2011) (some internal citations omitted).

In *Ventura*, this Court held that the factual finding was not clearly erroneous where Ventura did not dispute the PSR and the District Court did not rule on the dispute. In Mr. Ransom's case, his counsel at sentencing clearly disputed the PSR's finding that there were 50 victims and asserted that there was an insufficient factual basis to support the finding. The district court sustained the objection. Although the judge did not specifically state it was imposing a sentence in variance from the guidelines it was clear to all that the court was doing so. The court's comments immediately before imposing the sentence are the only reasons given. It is obvious from the district court's first comment that the court was focused on the number of victims as a reason for a variance. "I look at the fact there are a number of victims who submitted victim impact statements." J.A. 358. The court's focus on the number of victims which was clearly in dispute and based on some unarticulated factual findings is subject to review for clear error without the need for specific objections or requests for findings. *United States v Ventura*, *supra*.

This Court in *In re Sealed Case*, 552 F.3d at 844-845, held that the clearly erroneous standard of review applies to factual determinations in sentencing and explained the standard as follows:

> a finding of fact will not be overturned as "clearly erroneous" unless, "although there is evidence to support it, the reviewing court on the entire

42

> evidence is left with the definite and firm
> conviction that a mistake has been committed."
>          . . . .
> "However, when a district judge altogether fails to
> make findings or fails to make findings with
> respect to a material issue, appellate courts
> normally vacate the judgment and remand for the
> judge to make those findings."
> (citations omitted).

In Mr. Ransom's case, the judge failed to make factual findings on the

material issue of the number of victims and to explain why the number of

victims, if less than 50 justifies exceeding Guidelines by 15 months.

Accordingly, his ruling was clearly erroneous and the Court should

vacate the judgment and remand to make those findings.

## II.    Mr. Talbott and Mr. Ransom's Sentences Were Substantively Unreasonable

Both Mr. Talbott and Mr. Ransom received higher than guidelines

sentences. These sentences were substantively unreasonable.

### A.    Mr. Talbott's Sentence Was Substantively Unreasonable

This Court has described the crux of a substantive reasonableness

inquiry: "In light of the facts and circumstances of the offense and offender,

is the sentence so unreasonably high or unreasonably low as to constitute an

abuse of discretion by the district court?" *United States v. Gardellini*, 545

F.3d 1089, 1093 (D.C. Cir. 2008).

43

Here, all of Mr. Talbott's conduct was accounted for under the sentencing guidelines, yet and the district court imposed a sentence 66% higher than the top of the Guidelines range. This dramatic rejection of the sentencing guidelines calls into question the substantive propriety of the sentence. *See Gall*, 552 U.S. at 50 ("We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one."); *see also In re Sealed Case*, 527 F.33d at 191 ("If the district court decides to impose a sentence outside the Guidelines, it 'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'") (quoting *Gall*, 550 U.S. at 50).

To be sure, Mr. Talbott's conduct in this case is troubling: he committed new criminal offenses while on pretrial release. Importantly, however, these offenses were taken into consideration when Mr. Talbott's sentencing Guidelines range was calculated.

The record shows that the district court went well above the guidelines range based on its determination that Mr. Talbott is a man of poor moral character, and the district court's unsupported determination that Mr. Talbott had undisclosed assets squirreled away somewhere. J.A. 495 ("[T]his is very kind of callous and calculating, and just bold, everything

44

that you did. And it shows a lot about your character, sir, or lack thereof, I should say."). Of course, there is a strong argument that any person who has been convicted of a fraud crime has a suspect moral character. Nevertheless, the mere fact of a criminal conviction that involved deceit does not itself justify any particular sentence.

The district court's task was to apply the factors set out in 18 U.S.C. § 3553(a) to Mr. Talbott's offense. The district court abused its discretion when it applied these factors.

One factor the district court considers is the federal sentencing guidelines. 18 U.S.C. § 3553(a)(4)(A). The guidelines in this case call for a sentence between 63 and 78 months. J.A. 471. The Court imposed a sentence of 120 months – 42 months above the top of that range.

Section 3553(a)(6) directs a court to avoid unwarranted disparities. Chester Ransom was Mr. Talbott's co-defendant. Mr. Ransom was equally culpable as Mr. Talbott. J.A. 316-21, 325-26. Indeed, according to the government, "the defendant Ransom, with his co-defendant Talbott . . . committed multiple fraudulent schemes over a lengthy period of time that cause substantial financial and emotional harm to a wide variety of innocent victims in the community," including mortgage and tax fraud schemes. J.A. 316; *see also* J.A. 325-26 (in response to the court's question

45

as to the government's assessment "of the respective responsibility of the two defendants," the government responded, "they both pled guilty to the same offenses."). Mr. Ransom received a sentence that was nothing close to the significant sentence Mr. Talbott received: Mr. Ransom was sentenced to 72 months in prison, or 16 months above the top of the Guidelines range, while Mr. Talbott was sentenced to 120 months in prison, or 42 months above the top of the Guidelines range. *Compare* J.A. 360, 365, 377 (Ransom's sentence) *with* J.A. 495 (Talbott's sentence). The two men had the same criminal history, engaged in the same offense conduct, and had the same victims. The analysis under § 3553(a) should have been almost identical for both of them.

Mr. Ransom and Mr. Talbott differ in two offsetting ways. First, Mr. Talbott committed a new offense while on release. To be sure, this conduct is serious, though not serious enough to justify the magnitude of the four-year disparity imposed. Second, Mr. Talbott suffers from a serious health condition. Indeed, the district court recognized as much, commenting that it was "probably about the only thing that's going to keep you from serving a lot more time than what I'm ultimately going to give you." J.A. 495-96. Presumably, these two factors offset one another – at least in large part.

46

Even in light of these two offsetting factors, Mr. Talbott's sentence was still significantly higher than Mr. Ransom's: Mr. Talbott received 10 years in prison – four more years than Mr. Ransom received for the same offenses. The gulf between these sentences is not consistent with section 3553(a)(6)'s requirement that the district court avoid unwarranted disparities. As a result, Mr. Talbott's sentence, which is so "unreasonably high . . . as to constitute an abuse of discretion," *Gardellini*, 545 F.3d at 1093, is substantively unreasonable. *See United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010) (finding a sentence that included a term of supervised release that "affirmatively and aggressively interfere[d] with the goal of rehabilitation" to be substantively unreasonable because it was inconsistent with one purpose of sentencing under § 3553(a)).

**B.     Mr. Ransom's Sentence Was Substantively Unreasonable**

The trial court did not identify any compelling reasons to impose a sentence that was 15 months outside the guidelines as required under established law: "If the district court decides to impose a sentence outside the Guidelines, it 'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *In re Sealed Case*, 527 F.3d at 191 (quoting *Gall*, 550 U.S. at 50). Indeed, the limited reasons given by the trial court were each accounted

47

for under the guidelines. Again, the only explanation given for the above guideline sentence was: 1) the number of victims 2) he did not receive an enhancement for abuse of trust and 3) he committed the instant offense while on probation for a prior similar offense. The judge's Statement of Reasons echoed these reasons and added the assertion that there was a lack of real remorse. J.A. 600.

In this case, the Probation Office found that there were more than 50 victims and the Guideline range was 70-87 months. It is unreasonable to find, on the one hand, that there was insufficient evidence to support a finding of more than 50 victims and at the same time exceed the 57-month upper limit of the guidelines to 72 months. The parties stipulated that the guidelines were reasonable and the judge applied the law and found the appropriate guideline range to be the same as the parties' stipulation. While it is true as the judge said upon making that finding that the guidelines are only advisory, it is also true that the judge can't arbitrarily circumvent the guidelines because he does not like the outcome of a factual finding on a contested issue. He must have compelling reasons for imposing a sentence 15 months in excess of the guidelines and here no compelling reason was given. Without making the necessary finding to support the probation officer's recommendation the court nevertheless imposed a sentence

48

conveniently within that range. The judge was clearly affected by the emotional statements of the victims but there was no compelling justification as to why this case and these victims should be given more weight than the typical victims in fraud cases as contemplated by the Guideline drafters. The guidelines and § 3553(a) factors were intended to limit to the extent possible unwarranted disparity in sentencing based on emotional responses in individual cases. In this case the judge ignored the guidelines and the sentencing commission data and rather than lowering the sentence to avoid such disparities increased it with no compelling reason.

The judge also took an inconsistent and unreasonable position without any factual support when he added the assertion that the defendant's lack of "real remorse" justified a variance from the guidelines. The judge had found that the defendant was entitled to a 3-point reduction in the guidelines based on his early acceptance of responsibility. *See* J.A. 526. He gave no explanation for this apparent disregard of the guidelines, much less a compelling reason for his variance. Unlike Mr. Talbott, Mr. Ransom had no significant violations of his conditions of release while pending sentence.

The assertion that the variance was justified because he committed the instant offense while on probation for a similar offense, fails to take into account the fact that the guidelines had already increased his criminal history

by two points based on the same aggravating circumstance. *See* J.A. 528.

There is no explanation, much less a compelling one, for why the guideline

enhancement was inadequate or why Mr. Ransom's actions in this respect

take his case out of the heartland of cases of other similarly situated

defendants.

The court's assertion that a variance was justified because Mr.

Ransom did not receive an guideline enhancement for abuse of trust is not

only procedurally flawed because the court did not give the defendant an

opportunity to address the assertion, but it is also substantively unreasonable

because the facts of this case do not support a guideline enhancement for

abuse of trust. The abuse of trust enhancement of the U.S.S.G. § 3B1.3 is

generally reserved for professionals with fiduciary duties and it was not

intended to apply to clerks or managers who don't exercise discretion. The

commentary to section 3B1.3 defines a "position of trust" as one that is

"characterized by professional or managerial discretion." U.S.S.G. § 3B1.3,

application note 1 (Nov. 1, 1994). Such positions, the commentary adds,

involve "substantial discretionary judgment that is ordinarily given

considerable deference." *Id.*   The application commentary gives examples

for applying the adjustment:

> This adjustment for example, applies in the case of
> an embezzlement of a client's funds by an attorney

50

> serving as a guardian, a bank executive's
> fraudulent loan scheme . . . . This adjustment does
> not apply in the case of an embezzlement or theft
> by an ordinary bank teller or hotel clerk because
> such positions are not characterized by the above –
> described factors.
> 3B1.3, Application Note 1, Definition of "Public
> or Private Trust."

In Mr. Ransom's case his actions with regard to the rental management company were ministerial and not discretionary, they were akin to a bank teller who diverted deposits. Instead of diverting deposits, Mr. Ransom diverted rent payments intended to pay the mortgage. Accordingly, the judge's legal conclusion was clearly in error and unreasonable.

For the reasons stated the district court did not give sufficiently compelling justifications to support the degree of variance of 15 months and as such sentence was substantively unreasonable. *In re Sealed Case*, 527 F.3d at 191 (quoting *Gall*, 550 U.S. at 50 ).

## III.  Appellants' Pre-Sentence Waiver Does Not Preclude Appellate Review

### A.  A Pre-Sentence Waiver Does Not Prevent A Person From Challenging A Sentence Imposed As A Result Of Unfair Procedures

An appeal waiver in a plea agreement only precludes a person from contesting a sentence "within the statutory range and imposed under fair procedures." *United States v. Guillen*, 561 F.3d 527, 529 (D.C. Cir. 2009).

51

So, while generally, a pre-sentence waiver of the right to appeal a sentence is enforceable, *id.*; *In re Sealed Case*, 702 F.3d 59, 63 (D.C. Cir. 2012) ("*In re Sealed Case II*"), a person agreeing to such a waiver does not "accept any defect or error that may be thrust upon him by . . . an errant sentencing court." *Guillen*, 561 F.3d at 530.

As this Court has explained, a waiver does not prevent an appeal if the district court commits an error of law during sentencing. *In re Sealed Case II*, 702 F.3d at 63; *see also Guillen*, 561 F.3d at 530. An error of law during sentencing occurs "if the sentencing court's failure in some material way to follow a prescribed sentencing procedure results in a miscarriage of justice." *Guillen*, 561 F.3d at 531. For example, if the district court "fails to advert to the factors in 18 U.S.C. § 3553(a)," the court "may disregard the waiver and consider the defendant's argument that the district court imposed an unlawful sentence." *Id.*; *see also In re Sealed Case II*, 702 F.3d at 63 (citing *Guillen*).

In their plea agreements, Mr. Talbott and Mr. Ransom waived their right to appeal their sentences. J.A. 134-35 (Talbott); J.A. 108-09 (Ransom). In this appeal, Mr. Talbott and Mr. Ransom argue that the district court's failure to follow the prescribed sentencing procedures resulted in a miscarriage of justice. *See Guillen*, 561 F.3d at 531. Because of the nature of

this challenge to his sentence, this Court may disregard Mr. Talbott and Mr.
Ransom's pre-sentence waivers and consider their argument that the district
court imposed an unlawful sentence. *See id.*

> **B.      Mr. Talbott Is Not Bound By Any Appeal Waiver In The
> Plea Agreement Because The Government Previously Was
> Relieved Of Its Obligations Under The Plea**

The government's decision to seek an upward departure at Mr.
Talbott's sentencing amounted to an argument that it was relieved of its
obligations under the plea agreement. If the government was relieved of its
obligations, Mr. Talbott should similarly be relieved of his.

In the plea agreement, the parties agreed that "neither party will seek
such a departure or seek any adjustment not set forth herein. Nor will either
party suggest that the Court consider such a departure or adjustment." J.A.
132. Although the government expressly reserved its right to seek an
obstruction of justice adjustment under U.S.S.G. § 3C1.1 under certain
circumstances, it did not reserve its ability to seek an adjustment under
§ 5K2.0. *See* J.A. 132.

Before Mr. Talbott's sentencing hearing, the government filed a
Supplemental Memorandum in Aid of Sentencing and Motion for Upward
Departure, requesting an upward departure under § 5K2.0. J.A. 417-21. In
the motion, the government argued that it should not be held to the stipulated

offense level in the plea agreement given "the seriousness and pervasiveness of [Mr. Talbott's] actions." J.A. 418-21. Based on this misconduct, the government argued an upward departure under § 5K2.0 to offense level 30 was warranted. J.A. 418. For these reasons, the government requested that Mr. Talbott be sentenced to 132 months. J.A. 418.

At the sentencing hearing, the government reiterated its position that the initial Guidelines calculation should not stand: "we do believe that after making that first guidelines calculation, that there is a basis for this court to upward depart to . . . offense level 30." J.A. at 449.

When it requested an upward departure, the government asked to be relieved of its obligation to adhere to the guidelines stipulations in the plea agreement. J.A. 449-63. Under these circumstances, it follows that Mr. Talbott should not now be precluded from challenging his sentence based on his pre-sentence waiver given the government's decision to seek an upward departure not contemplated by the plea agreement. *See Guillen*, 561 F.3d at 530 (a waiver of a right to appeal a sentence merely precludes the person from contesting sentences "within the statutory range"). If the government is relieved of its obligations under the agreement, Mr. Talbott should also be relieved of his.

### C.     Mr. Ransom's Pre-Sentence Waiver Was Not Made Knowingly and Intelligently Due to Ineffective Assistance of Counsel and it is Unenforceable Because The District Court Committed An Error Of Law During Sentencing

In Mr. Ransom's case he did not waive his appeal rights because his attorney who negotiated the plea agreement was ineffective and sentencing court did not follow fair sentencing procedures.

Indeed, this Court in *Guillen* has emphasized that ineffective assistance in negotiating the plea agreement and waiver is perhaps the most obvious reason not to enforce an appeal waiver:

> Most obvious, a waiver should not be enforced insofar as the defendant makes a colorable claim he received ineffective assistance of counsel in agreeing to the waiver. If such a claim is upheld, it follows that, because the defendant's attorney failed to ensure the defendant understood the consequences of his waiver, the waiver was not knowing, intelligent, and voluntary.
> *Id.*

In Mr. Ransom's case, the record makes it clear that he did not knowingly and intelligently waive his right to appeal his sentence because his lawyer did not advise him that by agreeing in the Statement of the Offense that there were more than 50 victims, his sentencing guidelines would be increased by 4 levels and the probation office was likely to advise the Court that his guideline range would be 70-87 months rather than 46-57 months. It is clear that Mr. Ransom's lawyer did not advise him that he would likely receive a

guideline range with 30 more months of incarceration than intended by the parties. After the plea hearing but before sentencing Mr. Ransom retained new counsel who noted the error of earlier counsel in advising the defendant to agree to more than 50 victims, without anticipating that would result in a significantly higher guideline range. New counsel in an effort to avoid withdrawing the guilty plea, negotiated a factual stipulation with the government providing that there were only 9 victims and not 50. J.A. 158. New counsel objected to the PSR finding of fact regarding 50 victims and the resulting 4 level enhancements of the offense guidelines. J.A. 513 B & C. The issue of ineffective assistance of counsel was raised in Ransom's Objections to the Presentence Investigation Report, J.A. 513 B-C, and again at the sentencing hearing. J.A. 306.

It was well established that defense counsel had a duty to advise a defendant with correct estimates about the likely sentence a defendant may receive when considering whether to accept or reject a plea offer made by the government. Where the attorney fails to do so and the defendant relies on incorrect or incomplete legal advice to his detriment, the defendant is denied effective assistance of counsel in violation of his rights under the Sixth Amendment. As the Supreme Court recently affirmed in *Lafler v. Cooper*, 132 S. Ct. 1376 ( 2012),

> Defendants have a Sixth Amendment right to
> counsel, a right that extends to the plea-bargaining
> process. . . . During plea negotiations defendants
> are "entitled to the effective assistance of
> competent counsel." *McMann v. Richardson*, 397
> U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763
> (1970).
> *Id.* at 1384 (internal citations omitted).

This Circuit has addressed ineffective claims in the context of plea

negotiations and "plainly incorrect" estimates of likely sentences:

> This circuit has held that a lawyer who advises his
> client whether to accept a plea offer falls below the
> threshold of reasonable performance if the lawyer
> makes a "plainly incorrect" estimate of the likely
> sentence due to ignorance of applicable law of
> which he "should have been aware." *United States
> v. Gaviria*, 116 F.3d 1498, 1512 (1997).

*Untied States v. Booze*, 293 F.3d 516, 518 (D.C. Cir. 2002). As was made

clear in *Gaviria*, *supra*, defense counsel must be fully conversant with the

U.S. Sentencing Guidelines and the calculations associated with Career

Criminal and Armed Career Criminal provisions. In the instant case it is

clear that the defendant was not advised by counsel that under the sentencing

guidelines he would receive a 4 point enhancement for defrauding over 50

victims. Although counsel at sentencing attempted to mitigate the prejudice

of his predecessor's error by entering into the stipulation modifying the

statement of offense, once the plea was entered and the statement of offense

signed and affirmed in court, the Mr. Ransom was irrevocably prejudiced. In

*Gaviria*, in the context of legal advice regarding sentencing guidelines, this Court reiterated the Supreme Court's standard in *Strickland v. Washington*, 466 U.S. 668 (1984), for finding that deficient performance was prejudicial: "counsel's deficient performance was prejudicial, i.e., that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Gaviria*, 116 F.3d at 1512 (citing *Strickland*, 466 U.S. at 694).

In this case had the defense counsel properly advised the defendant and negotiated a Statement of Offense at the outset that did not provide facts of more than 50 victims, there is a reasonable probability that the outcome would have been different. The probation office would have had no factual basis to suggest a guideline enhancement and the court would not have a basis to circumvent the guidelines.

As was made clear in *Gaviria*, *supra*, defense counsel must be fully conversant with the U.S. Sentencing Guidelines and the calculations associated with the guidelines. In the instant case, defense counsel failed to advise the defendant of the likely impact of the Statement of Offense agreeing to more than 50 victims. The government's Stipulation Modifying Defendant Ransom's Statement of the Offenses, J.A 158, and the prosecutor's statement at sentencing that it did so allow the government to

live up to its bargain and make sure the Court was aware of the parties' intentions. J.A. at 314, made it clear that the inclusion of the admission about more than 50 victims in the Statement of the Offense was a mistake by counsel and the defendant was not aware of it's likely impact on sentencing. There is a reasonable probability that had the defendant known of the likely impact on the guidelines and sentencing in general, a different statement of offense would have been agreed to that did not open the door to the enhancement or variance at issue. Accordingly, there is a "reasonable probability that but for counsel's unprofessional errors the result would have been different." *Strickland*, 466 U.S. at 694.

It is also important to note that the waiver clause in a plea agreement is not without exceptions. It specifically reserves the defendant's right to make collateral attacks upon a sentence: "Further, your client reserves the right to make a collateral attack upon his sentence pursuant to 28 U.S.C. § 2255, if new and currently unavailable information becomes known to him." J.A. 109.Clearly, Mr. Ransom was not informed prior to signing the waiver about his likely exposure to a significantly higher sentence from the inclusion of the number of victims in the Statement of the Offense. Accordingly, new and currently unavailable information became known to him. The means by which the defendant can attack his sentence is not a

material part of the waiver clause, but rather recognition of the usual procedural method for attacking a sentence or conviction based on new evidence or information. Such new information that was not available is usually, but not necessarily, the result of ineffective assistance of counsel. The information was new and not available due to either ineffective assistance of counsel and or mutual mistake of the parties at the time he signed the agreement. In either event, there was no knowing and intelligent waiver of his appellant rights by Mr. Ransom.

Moreover, Mr. Ransom adopts the arguments of Mr. Talbott herein that waiver does not prevent an appeal if the district court commits an error of law during sentencing. For all of the forgoing reasons the Court should disregard the appeal waiver with regard to Mr. Ransom.

## CONCLUSION

Mr. Talbott's sentence should be vacated and the case should be remanded for resentencing because his sentence is procedurally and substantively unreasonable. At resentencing, the district court should adequately explain the basis for its decision-making and, if it opts to impose an above-Guidelines sentence, provide a justification for that upward deviation that is sufficiently compelling to support the degree of the variance.

Mr. Ransom's sentence, which was 15 months above the guideline range, was procedurally unreasonable because the judge failed to identify any specific § 3553(a) factors that justified a variance from the sentencing guidelines and because the court relied on facts regarding the number of victims despite its earlier finding that the evidence was insufficient to make reliable findings of fact that there were over 50 victims. The court's sentence was substantively unreasonable because it failed to give compelling reasons justifying a 15-month variance when virtually all of the factors identified were considered by the Guidelines themselves and the defendant's actions were not shown to be outside the heartland of the usual fraud cases. For all of these reasons, Mr. Ransom's sentence should be vacated and the case should be remanded for resentencing.

## ORAL ARGUMENT IS REQUESTED

Mr. Talbott and Mr. Ransom respectfully suggest that oral argument is necessary. Accordingly, they request oral argument on the issues presented in this appeal.

61

Respectfully submitted,

/s/ Matthew G. Kaiser
Matthew G. Kaiser
*Counsel for Bryan W. Talbott*

Matthew G. Kaiser
Rebecca S. LeGrand
Rachel A. Browder
The Kaiser Law Firm PLLC
1750 K Street NW
Suite 200
Washington, DC 20006
(202) 640-2850
mkaiser@tklf.com

/s/ Richard Seligman
Richard Seligman
*Counsel for Chester Ransom Jr.*

Law Office of Richard Seligman
1350 Connecticut Ave. NW
Suite 202
Washington DC 20036
(202) 745-7800
RickSelig@aol.com

# CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*13,504*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [     ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [     ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: April 26, 2013          /s/ Matthew G. Kaiser
                               *Counsel for Appellant Talbott*

                               /s/ Richard Seligman
                               *Counsel for Appellant Ransom*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 26th day of April, 2013, I caused this

Brief of Appellants and Joint Appendix to be filed electronically with the

Clerk of the Court using the CM/ECF System, which will send notice of

such filing to the following registered CM/ECF users:

> Elizabeth Trosman
> Office of the U.S. Attorney
> 555 4th Street, NW
> Washington, DC  20530
> (202) 525-6829

> *Counsel for Appellee*

I further certify that on this 26th day of April, 2013, I caused the

required copies of the Brief of Appellants and Joint Appendix to be hand

filed with the Clerk of the Court. I further certify that a copy of the Sealed

Supplement has been served, via UPS Ground Transportation, to counsel for

the Appellee.

/s/ Matthew G. Kaiser
*Counsel for Appellant Talbott*

/s/ Richard Seligman
*Counsel for Appellant Ransom*

# ADDENDUM

# ADDENDUM TABLE OF CONTENTS

**Page**

18 U.S.C. § 286....................................................................Add. 1

18 U.S.C. § 1341..................................................................Add. 1

18 U.S.C. § 1344..................................................................Add. 2

18 U.S.C. § 1349..................................................................Add. 2

18 U.S.C. § 3231..................................................................Add. 2

18 U.S.C. § 3553..................................................................Add. 2

18 U.S.C. § 3553(a) ............................................................Add. 2

18 U.S.C. § 3553(a)(4)(A) ..................................................Add. 3

18 U.S.C. § 3553(a)(6).........................................................Add. 4

18 U.S.C. § 3553(c) .............................................................Add. 6

18 U.S.C. § 3553(c)(2).........................................................Add. 6

22 D.C. Code § 1805 ...........................................................Add. 8

22 D.C. Code § 3231 ...........................................................Add. 8

22 D.C. Code § 3242(a) .......................................................Add. 9

28 U.S.C. § 991(B) ..............................................................Add. 9

28 U.S.C. § 1291..................................................................Add. 11

28 U.S.C. § 2255..................................................................Add. 11

## 18 U.S.C. § 286.
### CONSPIRACY TO DEFRAUD THE GOVERNMENT WITH RESPECT TO CLAIMS

Whoever enters into any agreement, combination, or conspiracy to defraud the United States, or any department or agency thereof, by obtaining or aiding to obtain the payment or allowance of any false, fictitious or fraudulent claim, shall be fined under this title or imprisoned not more than ten years, or both.

## 18 U.S.C. § 1341.
### FRAUDS AND SWINDLES

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

## 18 U.S.C. § 1344.
### BANK FRAUD

Whoever knowingly executes, or attempts to execute, a scheme or artifice—
>    **(1)** to defraud a financial institution; or
>    **(2)** to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

## 18 U.S.C. § 1349.
### ATTEMPT AND CONSPIRACY

Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

## 18 U.S.C. § 3231.
### DISTRICT COURTS

The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.
Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof.

## 18 U.S.C. § 3553.
### IMPOSITION OF A SENTENCE

**(a) Factors To Be Considered in Imposing a Sentence.—** The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>    **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>    **(2)** the need for the sentence imposed—

**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

**(B)** to afford adequate deterrence to criminal conduct;

**(C)** to protect the public from further crimes of the defendant; and

**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** the kinds of sentence and the sentencing range established for—

**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

**(i)** issued by the Sentencing Commission pursuant to section 994 (a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28); and

**(ii)** that, except as provided in section 3742 (g), are in effect on the date the defendant is sentenced; or

**(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994 (a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28);

**(5)** any pertinent policy statement—

**(A)** issued by the Sentencing Commission pursuant to section 994 (a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing

Commission into amendments issued under section 994
(p) of title 28); and

(**B**) that, except as provided in section 3742 (g), is in
effect on the date the defendant is sentenced.[1]

(**6**) the need to avoid unwarranted sentence disparities among
defendants with similar records who have been found guilty of
similar conduct; and

(**7**) the need to provide restitution to any victims of the offense.

(**b**) **Application of Guidelines in Imposing a Sentence.—**

(**1**) **In general.—** Except as provided in paragraph (2), the court
shall impose a sentence of the kind, and within the range,
referred to in subsection (a)(4) unless the court finds that there
exists an aggravating or mitigating circumstance of a kind, or to
a degree, not adequately taken into consideration by the
Sentencing Commission in formulating the guidelines that
should result in a sentence different from that described. In
determining whether a circumstance was adequately taken into
consideration, the court shall consider only the sentencing
guidelines, policy statements, and official commentary of the
Sentencing Commission. In the absence of an applicable
sentencing guideline, the court shall impose an appropriate
sentence, having due regard for the purposes set forth in
subsection (a)(2). In the absence of an applicable sentencing
guideline in the case of an offense other than a petty offense,
the court shall also have due regard for the relationship of the
sentence imposed to sentences prescribed by guidelines
applicable to similar offenses and offenders, and to the
applicable policy statements of the Sentencing Commission.

(**2**) **Child crimes and sexual offenses.—**

(**A**) [2] Sentencing.—In sentencing a defendant convicted
of an offense under section 1201 involving a minor
victim, an offense under section 1591, or an offense
under chapter 71, 109A, 110, or 117, the court shall
impose a sentence of the kind, and within the range,
referred to in subsection (a)(4) unless—

(**i**) the court finds that there exists an aggravating
circumstance of a kind, or to a degree, not

---

[1] So in original. The period probably should be a semicolon.

[2] So in original. No subpar. (B) has been enacted.

Add. 4

adequately taken into consideration by the
Sentencing Commission in formulating the
guidelines that should result in a sentence greater
than that described;

**(ii)** the court finds that there exists a mitigating
circumstance of a kind or to a degree, that—

> **(I)** has been affirmatively and specifically
> identified as a permissible ground of
> downward departure in the sentencing
> guidelines or policy statements issued under
> section 994 (a) of title 28, taking account of
> any amendments to such sentencing
> guidelines or policy statements by Congress;
> **(II)** has not been taken into consideration by
> the Sentencing Commission in
> formulating the guidelines; and
> **(III)** should result in a sentence different
> from that described; or

**(iii)** the court finds, on motion of the Government,
that the defendant has provided substantial
assistance in the investigation or prosecution of
another person who has committed an offense and
that this assistance established a mitigating
circumstance of a kind, or to a degree, not
adequately taken into consideration by the
Sentencing Commission in formulating the
guidelines that should result in a sentence lower
than that described.

In determining whether a circumstance was adequately
taken into consideration, the court shall consider only the
sentencing guidelines, policy statements, and official
commentary of the Sentencing Commission, together
with any amendments thereto by act of Congress. In the
absence of an applicable sentencing guideline, the court
shall impose an appropriate sentence, having due regard
for the purposes set forth in subsection (a)(2). In the
absence of an applicable sentencing guideline in the case
of an offense other than a petty offense, the court shall
also have due regard for the relationship of the sentence
imposed to sentences prescribed by guidelines applicable

Add. 5

to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission, together with any amendments to such guidelines or policy statements by act of Congress.

**(c) Statement of Reasons for Imposing a Sentence.—** The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence—

**(1)** is of the kind, and within the range, described in subsection (a)(4), and that range exceeds 24 months, the reason for imposing a sentence at a particular point within the range; or

**(2)** is not of the kind, or is outside the range, described in subsection (a)(4), the specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in a statement of reasons form issued under section 994 (w)(1)(B) of title 28, except to the extent that the court relies upon statements received in camera in accordance with Federal Rule of Criminal Procedure 32. In the event that the court relies upon statements received in camera in accordance with Federal Rule of Criminal Procedure 32 the court shall state that such statements were so received and that it relied upon the content of such statements.

If the court does not order restitution, or orders only partial restitution, the court shall include in the statement the reason therefor. The court shall provide a transcription or other appropriate public record of the court's statement of reasons, together with the order of judgment and commitment, to the Probation System and to the Sentencing Commission,,[3] and, if the sentence includes a term of imprisonment, to the Bureau of Prisons.

**(d) Presentence Procedure for an Order of Notice.—** Prior to imposing an order of notice pursuant to section 3555, the court shall give notice to the defendant and the Government that it is considering imposing such an order. Upon motion of the defendant or the Government, or on its own motion, the court shall—

**(1)** permit the defendant and the Government to submit affidavits and written memoranda addressing matters relevant to the imposition of such an order;

**(2)** afford counsel an opportunity in open court to address orally the appropriateness of the imposition of such an order; and

---

[3] So in original.

(3) include in its statement of reasons pursuant to subsection (c) specific reasons underlying its determinations regarding the nature of such an order.

Upon motion of the defendant or the Government, or on its own motion, the court may in its discretion employ any additional procedures that it concludes will not unduly complicate or prolong the sentencing process.

**(e) Limited Authority To Impose a Sentence Below a Statutory Minimum.—** Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

**(f) Limitation on Applicability of Statutory Minimums in Certain Cases.—** Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) or section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 960, 963), the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that—

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

**(5)** not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

## 22 D.C. CODE § 1805.
### PERSONS ADVISING, INCITING, OR CONNIVING AT CRIMINAL OFFENSE TO BE CHARGED AS PRINCIPALS

In prosecutions for any criminal offense all persons advising, inciting, or conniving at the offense, or aiding or abetting the principal offender, shall be charged as principals and not as accessories, the intent of this section being that as to all accessories before the fact the law heretofore applicable in cases of misdemeanor only shall apply to all crimes, whatever the punishment may be.

## 22 D.C. CODE § 3231.
### TRAFFICKING IN STOLEN PROPERTY

(a) For the purposes of this section, the term "traffics" means:
(1) To sell, pledge, transfer, distribute, dispense, or otherwise dispose of property to another person as consideration for anything of value; or
(2) To buy, receive, possess, or obtain control of property with intent to do any of the acts set forth in paragraph (1) of this subsection.
(b) A person commits the offense of trafficking in stolen property if, on 2 or more separate occasions, that person traffics in stolen property, knowing or having reason to believe that the property has been stolen.
(c) It shall not be a defense to a prosecution under this section, alone or in conjunction with § 22-1803, that the property was not in fact stolen, if the accused engages in conduct which would constitute the crime if the attendant circumstances were as the accused believed them to be.

Add. 8

(d) Any person convicted of trafficking in stolen property shall be fined not more than $ 10,000 or imprisoned for not more than 10 years, or both.

## 22 D.C. CODE § 3242.
### PENALTIES FOR FORGERY

(a) Any person convicted of forgery shall be fined not more than $ 10,000 or imprisoned for not more than 10 years, or both, if the written instrument purports to be:

    (1) A stamp, legal tender, bond, check, or other valuable instrument issued by a domestic or foreign government or governmental instrumentality;

    (2) A stock certificate, bond, or other instrument representing an interest in or claim against a corporation or other organization of its property;

    (3) A public record, or instrument filed in a public office or with a public servant;

    (4) A written instrument officially issued or created by a public office, public servant, or government instrumentality;

    (5) A check which upon its face appears to be a payroll check;

    (6) A deed, will, codicil, contract, assignment, commercial instrument, or other instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status; or

    (7) A written instrument having a value of $ 10,000 or more.

*    *    *

## 28 U.S.C. § 991.
### UNITED STATES SENTENCING COMMISSION;
#### ESTABLISHMENT AND PURPOSES

**(a)** There is established as an independent commission in the judicial branch of the United States a United States Sentencing Commission which shall consist of seven voting members and one nonvoting member. The President, after consultation with representatives of judges, prosecuting attorneys, defense attorneys, law enforcement officials, senior citizens, victims of crime, and others interested in the criminal justice process, shall appoint the voting members of the Commission, by and with the advice and consent of the Senate, one of

whom shall be appointed, by and with the advice and consent of the Senate, as the Chair and three of whom shall be designated by the President as Vice Chairs. At least 3 of the members shall be Federal judges selected after considering a list of six judges recommended to the President by the Judicial Conference of the United States. Not more than four of the members of the Commission shall be members of the same political party, and of the three Vice Chairs, no more than two shall be members of the same political party. The Attorney General, or the Attorney General's designee, shall be an ex officio, nonvoting member of the Commission. The Chair, Vice Chairs, and members of the Commission shall be subject to removal from the Commission by the President only for neglect of duty or malfeasance in office or for other good cause shown.

**(b)** The purposes of the United States Sentencing Commission are to—

> **(1)** establish sentencing policies and practices for the Federal criminal justice system that—
>
>> **(A)** assure the meeting of the purposes of sentencing as set forth in section 3553 (a)(2) of title 18, United States Code;
>>
>> **(B)** provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices; and
>>
>> **(C)** reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice process; and
>
> **(2)** develop means of measuring the degree to which the sentencing, penal, and correctional practices are effective in meeting the purposes of sentencing as set forth in section 3553 (a)(2) of title 18, United States Code.

## 28 U.S.C. § 1291.
### FINAL DECISIONS OF DISTRICT COURTS

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292 (c) and (d) and 1295 of this title.

## 28 U.S.C. § 2255.
### FEDERAL CUSTODY; REMEDIES ON MOTION ATTACKING SENTENCE

**(a)** A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

**(b)** Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

**(c)** A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.

(**d**) An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.

(**e**) An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

(**f**) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

> (**1**) the date on which the judgment of conviction becomes final;
>
> (**2**) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (**3**) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (**4**) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

(**g**) Except as provided in section 408 of the Controlled Substances Act, in all proceedings brought under this section, and any subsequent proceedings on review, the court may appoint counsel, except as provided by a rule promulgated by the Supreme Court pursuant to statutory authority. Appointment of counsel under this section shall be governed by section 3006A of title 18.

(**h**) A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—

> (**1**) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (**2**) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.